UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALI ABOU KHODR,

    Petitioner,

Case No. 10-cv-10505

v.

HONORABLE STEPHEN J. MURPHY, III

REBECCA J. ADDUCI, District Director,
Bureau of Immigration and Customs
Enforcement, Detroit Field Office,

    Respondent.
                                             /

**OPINION AND ORDER GRANTING
PETITION FOR A WRIT OF HABEAS CORPUS**

This is an immigration case requiring the Court to consider the mandatory detention provisions of the Immigration and Nationality Act. Because the Court finds that the statute at issue clearly and unambiguously requires the Attorney General to take into custody certain aliens without delay in order to make applicable the mandatory detention provisions of 8 U.S.C. § 1226(c), the Court does not defer to the Board of Immigration Appeals' decision to the contrary in *Matter of Rojas*, 23 I. & N. Dec. 117 (BIA 2001). Since Petitioner was not taken into custody upon his release from criminal confinement, the mandatory detention provisions of 8 U.S.C. § 1226(c) are inapplicable to Petitioner and the Court concludes that Petitioner's detention is conducted pursuant to 8 U.S.C. § 1226(a), which allows for redetermination of custody.

The Court will grant Petitioner's writ of habeas corpus and remand the case to the Detroit Immigration Court so that an immigration judge can provide Petitioner with an individualized bond hearing pursuant to 8 U.S.C. § 1226(a). If the Immigration Court does

not provide a hearing within 21 days of the date of this order, Respondent shall release Petitioner from custody.

## FACTS

On February 4, 2010, Petitioner Ali Abou Khodr filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, claiming that his continued detention by Respondent Immigration and Customs Enforcement ("ICE") District Director, Rebecca Adduci, without the opportunity for a bond hearing, violated federal law. Petitioner is a native and citizen of Lebanon legally admitted to the United States as a lawful permanent resident on September 29, 1996. On May 26, 2004, he was convicted of conspiracy to possess with intent to distribute heroin, 21 U.S.C. § 846. He was sentenced to serve six months in a federal correctional facility in Pennsylvania, and two years of supervised release.

After he was released, ICE charged Petitioner as removable under 8 U.S.C. § 1227(a)(2)(A)(iii) as an alien convicted of an aggravated felony (drug trafficking), as well as under 8 U.S.C. § 1227(a)(2)(B)(i) as an alien convicted of a conspiracy to violate any law relating to a controlled substance. Petitioner appeared before an immigration court in Pennsylvania and admitted the factual allegations in the charging document. He sought relief in the form of Withholding of Removal under section 241(b)(3) of the Immigration and Nationality Act as well as deferral of removal pursuant to the Convention Against Torture ("CAT"). Then, on August 25, 2005, the Immigration Judge granted the government's motion to administratively close Petitioner's removal proceedings.[1] Petitioner returned to Michigan, where U.S. Marshals released him into the general population.

---

[1] It is not clear why the government moved to administratively close Petitioner's removal proceedings.

Petitioner was apprehended by ICE agents in Detroit in mid-December 2009, more than four years after being released from criminal custody. His case was recalendared and venue was transferred to the Immigration Court in Detroit, Michigan. On December 23, 2009, Immigration Judge Marsha K. Nettles denied Petitioner's request for an individualized bond hearing, concluding that he was subject to the mandatory detention provisions of 8 U.S.C. § 1226(c), the statute the Court is called upon to interpret in this case. Counsel for the respondent in this matter indicated that the immigration judge denied Petitioner a bond hearing because she concluded she was required to do so under 8 U.S.C. §1226(c) and the Board of Immigration Appeals' decision in *Matter of Rojas*. Petitioner did not appeal the immigration judge's bond determination, but rather filed this petition.

**DISCUSSION**

The sole issue before the Court is whether 8 U.S.C. § 1226(c), pursuant to which the immigration judge concluded Petitioner was subject to mandatory detention and therefore ineligible for bond, clearly and unambiguously applies to Petitioner, an alien detained by ICE more than four years after being released from criminal custody. Because the Court finds it does not apply, ICE's mandatory detention is contrary to the laws of the United States. The Court will grant the writ and remand the matter back to the immigration court for a bond hearing. If Petitioner is not given an individualized bond hearing by the immigration judge under 8 U.S.C. § 1226(a) within 21 days of the date of this order, Respondent shall release Petitioner from custody.

I. The Proper Respondent

The Court must first address a threshold issue raised by the Respondent in a footnote in its response brief. Respondent argues it is not the proper respondent since it is not the warden of the facility where Petitioner is presently detained. Response Br. p. 1 n. 1. It

3

states that the proper respondent is the warden of the Monroe County Jail, Petitioner's immediate custodian. *Id.* Respondent does not, however, request that the Court change the respondent and dismiss it from the case. The Court finds, for the reasons that follow, that the ICE District Director named as the respondent in the petition is the proper respondent.

The Sixth Circuit recently held, applying the immediate custodian rule for habeas petitions, that the ICE District Director is the proper respondent in a habeas petition brought by an alien, since the District Director has power over such aliens. *Roman v. Ashcroft*, 340 F.3d 314, 320 (6th Cir. 2003). The U.S. Supreme Court recently held, however, that the proper respondent for habeas challenges to present physical confinement is the warden of the facility where the petitioner is being held, as opposed to the Attorney General or some other remote supervisory official. *Rumsfeld v. Padilla*, 542 U.S. 426, 435-36 (2004). While this reasoning would seemingly require that the Monroe County Jail Warden be named as the respondent here, the Supreme Court in *Rumsfeld* expressly cabined its holding and did not resolve the question of who would be the proper respondent in a habeas petition filed by "an alien detained pending deportation." *Id.* at 435 n.8. Although Petitioner here is not "pending deportation" since he is not subject to a final order of removal and simply waiting to be removed, the Court finds the Supreme Court's statements in footnote 8 of the *Padilla* opinion are sufficiently broad to cover the present situation. *Cf. Kholyavskiy v. Achim*, 443 F.3d 946, 952 n.7 (7th Cir. 2006) ("The Supreme Court [in *Padilla*] expressly reserved the question of whether the immediate custody rule applies in the context of *immigration habeas petitions*.") (emphasis supplied). Accordingly, the Court will follow appropriate Sixth Circuit authority and find the ICE District Director is the proper party to be sued in the habeas case here.

Even if the proper respondent was the warden of the Monroe County Jail, the Court would find the change of the respondent to be a simple procedural formality. It would not change venue in this case given that the Monroe County Jail is located in this District . 28 U.S.C. § 102; 28 U.S.C. § 1391(e). Moreover, the U.S. Attorney's Office, rather than the Michigan Attorney General's office would likely continue to represent the respondent in this matter. Accordingly, if the Petitioner had legally named the wrong person as respondent, any error would be harmless.

II. Petitioner's Challenge to Respondent's Continued Detention

Since this case involves a statute interpreted by an agency responsible for its administration, the Court applies the two-step analysis established in *Chevron, U.S.A., Inc. v. Natural Res. Def. Counsel, Inc.*, 467 U.S. 837, 842-43 (1984). In *Chevron*, the U.S. Supreme Court stated:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

467 U.S. at 842-43 (footnotes omitted).

The Court, therefore, begins with the language of the statute at issue here and determines whether it is ambiguous. The relevant statute is 8 U.S.C. § 1226(c), which provides:

> (c) Detention of criminal aliens
> **(1) Custody**
> The Attorney General shall take into custody any alien who --

> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence [sic] to a term of imprisonment of at least 1 year, or
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>
> ***when the alien is released***, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
> **(2) Release**
> The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides ... that release of the alien from custody is necessary to provide protection to a witness ... and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding ....

8 U.S.C. § 1226(c) (emphasis supplied).

Paragraph (1) says nothing about the inability of certain aliens to receive bond hearings once they are taken into custody after being "released." It simply requires, through use of the word "shall," that the Attorney General detain certain classes of aliens "when the alien is released." Taken in isolation, paragraph (1) does not foreclose the possibility of later release from immigration custody on bond, if the alien warrants bond. The mandatory detention aspects of the statute derive from the language of paragraph (2), which permits the Attorney General to release "an alien described in paragraph (1)," only if the Attorney General "decides ... that the release of the alien from custody is necessary [for certain witness protection matters], *and* satisfies the Attorney General that the alien [is not a threat to the community or a flight risk]." *Id.* (emphasis supplied). Reading these two paragraphs together, those aliens governed by paragraph (1) that are unnecessary for witness protection matters cannot be released and, for that reason, are ineligible for bond. *See Matter of Rojas*, 23 I. & N. Dec. 117, 119 (BIA 2001).

The question presented by the instant petition is whether section 1226(c) even applies to aliens such as Petitioner who were not detained immediately upon release from criminal custody. Simply put, Petitioner argues the section does not apply here, while Respondent argues that it does. Petitioner's argument is that section does *not* apply because the phrase "when the alien is released" in paragraph (1) requires that the Attorney General take the alien into custody *immediately* upon release from criminal custody, or not at all. Respondent's argument that the reason the section *would* apply is that the statute is ambiguous as to whether the "when-the-alien-is-released" language modifies only "alien," requiring ICE to act at the moment of release, or whether it modifies "Attorney General" and the scope of his mandate, allowing ICE to arrest the criminal alien at *any* time after release from criminal custody. Respondent contends that the section is ambiguous on this point, and that because it is, the BIA's decision in *Matter of Rojas*, 23 I. & N. Dec. 117 (BIA 2001), finding that a criminal alien released from criminal custody but not immediately taken into custody is nevertheless subject to mandatory detention under section 1226(c), would apply.[2]

---

[2] The BIA's decision in *Matter of Rojas* did not directly address the point of statutory interpretation disputed in this Petition, i.e., the ambiguity *vel non* of the phrase "when the alien is released." Although the decision confronted the question of when the mandatory detention requirements of section 1226(c) apply to criminal aliens, it framed the determinative question as being whether the clause "alien listed in paragraph (1)" in subparagraph (2) referred strictly to those aliens listed in subparagraphs (A) through (D) of paragraph (1), or also included the clause "when the alien is released" that follows the four discrete categories listed in (A) through (D) of paragraph (1). The BIA *assumed* that paragraph (1) applied to the petitioner (the issue to be decided here), and proceeded to the next question of whether paragraph (2) prevented the petitioner from receiving a bond hearing. In this case, Petitioner does not appear to dispute the BIA's statutory reading of the interplay between paragraphs (1) and (2) in *Matter of Rojas,* but instead claims that the *entire* section of 1226(c) (paragraphs (1) *and* (2)) do not apply. It appears from the Court's independent reading of *Matter of Rojas* that the BIA did not in fact address the precise and more fundamental issue here, which is whether paragraph (1) of section 1226(c) applies in the first place. That is, *Rojas* did not address the question of whether paragraph (1) can apply when the Attorney General does not immediately take the criminal alien into custody.

The Court is persuaded by Petitioner's arguments and agrees that the phrase "when the alien is released" clearly and unambiguously requires that the Attorney General take the alien into custody immediately upon the alien's release from criminal custody. If Congress wished to permit the Attorney General to take custody of criminal aliens at any time after being released from criminal confinement, it could have done so using the phrase "at any time after the alien is released." But, by using the word "when," Congress demonstrated its intent that such aliens be taken into custody contemporaneous with their release or not at all (at least under section 1226(c)).

The BIA in *Matter of Rojas* seems to have agreed with this reading of the statute, though it reached a different result, as discussed *infra* at note 2. *See Rojas*, 23 I. & N. Dec. at 122 ("[Paragraph (1)] does direct the Attorney General to take custody of aliens immediately upon their release from criminal confinement."). Because the statute is clear that the detention must be immediate, the Court will not defer to the BIA's interpretation to the contrary. *See Chevron*, 467 U.S. at 843 n.9 ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.")

The Court notes that although none of the circuits, including the Sixth Circuit, and no court in this District, have ruled on the precise issue, the Court is not writing on a completely clean slate. Numerous district courts across the country have reached the same result the Court reaches here. For example, in *Quezada-Bucio v. Ridge*, 317 F. Supp. 2d 1221 (W.D. Wash. 2004), the court determined that:

> [T]he clear language of the statute indicates that the mandatory detention of aliens "when" they are released requires that they be detained at the time of release. Thus, if Congress had intended for mandatory detention to apply to aliens at any time after they were released, it easily could have used the language "after the alien is released," "regardless of when the alien is

8

released," or other words to that effect. Instead, Congress chose the word "when," which connotes a much different meaning.

*Id.* at 1230 (internal citation and quotations omitted).

Similarly, in *Waffi v. Loiselle*, 527 F. Supp. 2d 480 (E.D. Va. 2007), the court found:

The term "when" includes the characteristic of "immediacy," referring in its primary conjunctive sense, to action or activity occurring "at the time that" or "as soon as" other action has ceased or begun. *See* 20 The Oxford English Dictionary 209 (2d ed. 1989); The American Heritage Dictionary of the English Language (4th ed. 2000).

*Id.* at 488. The court rejected the government's argument that the term "when," as used in section 1226(c), is ambiguous because it can also be defined in a conditional sense, i.e., "in the event that." The court found that such a reading might make sense if Congress had used the term "whenever" or "in the event that," but neither were used. *Id.*

In response to the BIA's reading of the statute in *Matter of Rojas*, the court in *Waffi* held that were it to agree with the *Rojas* decision and find that the clause containing "when the alien is released" does not describe the class of aliens to be detained by the Attorney General, but instead describes the scope of the Attorney General's mandate, it would doom the clause to "removable surplus;" and the *Waffi* court queried when else could the Attorney General take an alien into custody except when he or she is released? *Id.* To read the statute in a manner that allows the Attorney General to take a criminal alien into custody without regard to the timing of the alien's release from custody would render the "when the alien is released" clause redundant and therefore null. *Id.*

Recently, the court in *Scarlett v. United States Dept. of Homeland Security Bureau of Immigration and Customs Enforcement*, 632 F. Supp. 2d 214 (W.D.N.Y. 2009), expressly agreed with the analysis set forth in *Quezada-Bucio* and *Waffi,* and found that the petitioner's detention was not authorized by section 1226(c) because that petitioner was released from incarceration nearly 18 months prior to his subsequent detention by ICE. *Id.*

at 219. It found that the detention was authorized instead by 8 U.S.C. § 1226(a), which afforded the alien an opportunity for an individualized bond hearing before an immigration judge. *Id.* at 219-20. *See also Bromfield v. Clark*, No. 06-757, 2007 WL 527511, *4 (W.D. Wash. Feb. 14, 2007); *Boonkue v. Ridge*, No. 04-566, 2004 WL 1146525, *2 (D. Or. May 7, 2004).

The Court acknowledges the existence of district court decisions that disagree with the above analysis. Specifically, certain district courts have concluded that the clause "when the alien is released" is ambiguous and those courts have deferred to the BIA's interpretation of the statute. *See, e.g., Sulayao v. Shanahan*, No. 09-7347, 2009 WL 3003188 (S.D.N.Y. Sept. 15, 2009); *Saucedo-Tellez v. Perryman*, 55 F. Supp. 2d 822, 885 (N.D. Ill. 1999). The Court, however, is not bound by any of these decisions and respectfully disagrees with the analysis supporting those decisions.

The Court is further well aware of the difficulties that a literal "immediacy" requirement would pose, and finds that immediacy contemplates that the Attorney General has a reasonable period of time after release in which to take the suspect alien into custody. *See, e.g., Zabadi v. Chertoff*, No. 05-03335, 2005 WL 3157377, *5 (N.D. Cal. Nov. 22, 2005) ("[T]he Department of Homeland Security need not act immediately but has a reasonable period of time after release from incarceration in which to detain. The government's contention, however, that it can wait, without good cause, for more than two years before detaining an alien is unreasonable and will not be followed by this order."). The Court need not establish a bright line test for "reasonableness" here since it finds that the four year plus delay in taking Petitioner into custody was clearly an unreasonable delay. *Cf. Zabadi*, 2005 WL at * 5 (finding unreasonable a two-year gap between release from criminal custody and ICE detention); *Waffi*, 527 F. Supp. 2d at 488 (alien taken into

immigration custody over one month after release from state custody precluded application of section 1226(c)); *Scarlett*, 632 F. Supp. 2d at 219 (18 months); *Quezada-Bucio*, 317 F. Supp. 2d at 1225 (3 years).

## CONCLUSION

Because the Court finds that the mandatory detention statute, 8. U.S.C. § 1226(c), is not applicable to Petitioner, who was taken into custody more than four years after being released from criminal custody, the Respondent's continued detention without the possibility of a bond hearing is in violation of the laws of the United States. Petitioner is in effect being detained pursuant to 8 U.S.C. § 1226(a), which permits a redetermination of custody pursuant to a bond hearing.

Accordingly, the Court will grant the petition for a writ of habeas corpus and remand the case to the Detroit Immigration Court for the limited purpose of providing Petitioner with an individualized bond hearing pursuant to 8 U.S.C. § 1226(a) within 21 days of the date of this order. If Petitioner is not afforded a bond hearing within 21 days, Respondent shall release Petitioner from custody.

**WHEREFORE**, it is hereby **ORDERED** that:

- The Petition for a writ of habeas corpus (docket no. 1) is **GRANTED**.

- The matter is remanded to the Detroit Immigration Court for the limited purpose of providing Petitioner with an individualized bond hearing pursuant to 8 U.S.C. § 1226(a).

- Should the Immigration Court fail to provide Petitioner with a bond hearing within 21 days of the date of this order, the Respondent shall release Petitioner from custody.

**SO ORDERED.**

                               s/Stephen J. Murphy, III
                               STEPHEN J. MURPHY, III
                               United States District Judge

Dated: March 11, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 11, 2010, by electronic and/or ordinary mail.

                                              <u>Alissa Greer                        </u>
                                              Case Manager